IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| DALI WIRELESS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> FIPLEX COMMUNICATIONS, INC., <br><br> Defendant. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Dali Wireless, Inc. ("Dali") for its Complaint against Defendant Fiplex Communications, Inc. ("Fiplex"), hereby alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action for damages and injunctive relief for infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, of two of Dali's patents: United States Patent No. 9,419,714 (the "'714 patent") and 9,439,242 (the "'242 patent") (collectively, the "Asserted Patents") related to distributed antenna systems. True and correct copies of the Asserted Patents are attached hereto as Exhibits A & B.

**PARTIES**

2. Dali is a pioneer in the world of all-digital distributed antenna systems ("DAS"), and owns numerous patents on its revolutionary all-digital DAS system. Dali's all-digital DAS provides tremendous advantages over a traditional DAS, including the ability dynamically to allocate wireless coverage and capacity. Dali is a Delaware corporation and has its principal place of business in Menlo Park, California.

3. Fiplex is a Florida corporation and has its principal place of business in Miami, Florida. Fiplex manufactures and sells telecommunications products and equipment around the world, including products that infringe the Asserted Patents.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 28 U.S.C. §§ 2201 and 2202 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*.

5. This Court has personal jurisdiction over Fiplex because, among other things, Fiplex's principal place of business and North American headquarters are in Miami, Florida. Fiplex is operating, conducting, engaging in, and/or carrying on a business or business venture in the state of Florida, specifically the manufacture and/or sale of telecommunications products and equipment, including products that infringe the Asserted Patents.

6. This Court also has personal jurisdiction over Fiplex because Fiplex has established minimum contacts within the state of Florida such that the exercise of personal jurisdiction over Fiplex will not offend traditional notions of fair play and substantial justice. For example, Fiplex's business activities in the state of Florida, specifically the manufacture and/or sale of telecommunications products and equipment, are continuous and systemic such that Fiplex could reasonably foresee the Court's exercise of personal jurisdiction over it in the state. Dali's claims of infringement arise directly from these activities. Fiplex derived revenue from its sale of products and equipment that practice the Asserted Patents in the state of Florida and expects or should reasonably expect its actions to have consequences within this District.

7.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)–(c) and 1400(b), because Fiplex is subject to personal jurisdiction in the state of Florida and has its principle place of business in the District.

## FACTUAL BACKGROUND

8.       In the event of a crisis, it is imperative that public safety personnel and first responders have reliable emergency responder radio coverage, particularly inside large buildings, subway tunnels, and other places radio signals cannot typically reach.  Many venues provide such reliable coverage by installing a distributed antenna system, or DAS.  With a DAS, multiple antennas are distributed throughout a venue, and radio signals are sent through those antennas (as opposed to being sent from a radio tower outside of the venue).  Thus, the radio signals can reach every part of the venue.  Again, this is of crucial importance in public safety installations—first responders have to be able to communicate to do their jobs effectively.

9.       Dali developed, and patented, an all-digital DAS.  Dali's all-digital DAS has a number of advantages over a traditional DAS.  Some of those advantages are of particular concern for public safety installations.  The Dali DAS allows radio coverage to be allocated dynamically, such that additional coverage can be sent to where it is needed most.  The Dali DAS supports the most-common public safety radio frequency bands, and be deployed over longer distances than a traditional DAS, which is ideal for subway tunnels and other venues where public safety is of paramount concern.  The Dali DAS also provides an internet protocol ("IP") backhaul, which allows IP cameras and other devices to be deployed alongside the DAS.

10.      Dali's groundbreaking digital DAS is a proven and successful solution for public safety implementation. For example, in June 2015, Dali's broadly patented advanced all-digital DAS was selected by the Dallas-Fort Worth Airport ("DFW") to provide in-building public safety

coverage for first responders to handle mission-critical communications quickly, efficiently and reliably. The project provides first-responder communications coverage in all eight terminals, totaling over 12,000,000 square feet of space.

11. Following Dali's successful bid at DFW, Dali was invited to bid for several additional public safety DAS solutions. Specifically, Dali and Fiplex were both invited to submit bids to provide DAS services for the Southeastern Pennsylvania Transportation Authority and Washington Metropolitan Area Transit Authority's public safety communication systems.

12. Upon information and belief, in both instances, Fiplex was awarded the contract to install its infringing "Digital Fiber DAS."

13. Fiplex has used and continues to use its Digital Fiber DAS to compete with Dali for contracts to install digital DAS public safety systems.

14. Fiplex's "Digital Fiber DAS" system directly infringes claims of Dali's Asserted Patents.

## COUNT I
### (Fiplex's Infringement of the '714 Patent)

15. Dali incorporates by reference Paragraphs 1–14 as if fully restated herein.

16. On August 16, 2016, the United States Patent and Trademark Office (hereinafter "PTO") duly and lawfully issued U.S. Patent No. 9,419,714 (the "'714 patent"), titled "Remotely Reconfigurable Distributed Antenna System and Methods."

17. The '714 patent claims the benefit of U.S. Patent Application No. 61/382,836, filed on September 14, 2010, entitled "Remotely Reconfigurable Distributed Antenna System and Methods."

18. The '714 patent discloses and claims, among other things, a system for transmitting signals that enables a high degree of flexibility to manage, control, enhance, and facilitate the usage and performance of a distributed wireless network.

19. Dali is the owner and assignee of all rights, title, and interest in and to the '714 patent and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

20. The '714 patent is valid and enforceable.

21. Fiplex has infringed and is infringing, either literally or under the doctrine of equivalents, at least claim 19 of the '714 patent in violation of 35 U.S.C. §§ 217, *et seq.*, directly and/or indirectly, by making, using, selling, offering for sale in the United States, and/or importing into the United States, without authority or license, its "Digital Fiber DAS."

22. Fiplex had been, and currently is, an active inducer of infringement of the '714 patent under 35 U.S.C. § 271(b) and a contributory infringer of the '714 patent under 35 U.S.C. § 271(c).

23. Claim 19 of the '714 patent states "A system for transmitted signals, comprising: a plurality of remote radio units; and a plurality of digital access units each coupled to another one of the plurality of digital access units, wherein one of the plurality of digital access units is coupled to a first signal source, and another one of the plurality of digital access units is configured to communicate with at least a portion of the plurality of remote radio units, wherein the portion of the plurality of remote radio units are each configured to packetize first uplink signals for transmission to the another one of the plurality of digital access units, and the another one of the plurality of digital access units is configured to packetize first downlink signals for transmission to the portion of the plurality of remote radio units."

24. Publicly available documents demonstrate that Fiplex's "Digital Fiber DAS" infringes at least claim 19 of the '714 patent.

25. "Digital Fiber DAS" are systems for transmitting signals comprising a DAS with a plurality of distributed access units, remote radio units, base transceiver stations, and base transceiver station sector radio frequency connections.

26. A depiction of Fiplex's "Digital Fiber DAS" is below (See Exhibit C "Fiplex Digital Fiber DAS Specifications" ):



27. A plurality of remote radio units, or as Fiplex calls them, "Digital Remotes" ("DRs") are connected to multiple indoor antennae and the digital access units, or, as Fiplex calls them, "Digital Masters" ("DMs"), are connected to one another.

28. One of the plurality of remote radio units, the topmost DM, is connected to the base transceiver stations. Any other one of the plurality of DMs other than the topmost DM is connected to a DR.

29. On information and belief, signals between the DRs and DMs are packetized.

30. Fiplex knew of the '714 patent, or should have known of the '714 patent and its infringing acts, at least as early as October 29, 2016.

31.     Fiplex knowingly and intentionally encourages and aids at least its end-user customers to directly infringe the '714 Patent.  On information and belief, Fiplex provides the Digital Fiber DAS and instructions to end-user customers so that such customers will use the products in an infringing manner.  For example, Fiplex and its agents promote and demonstrate the Digital Fiber DAS at trade shows and in various publications. *See, e.g.*, Exhibit C and Exhibit D "Fiplex Digital Fiber DAS Brochure."

32.     Fiplex's end-user customers directly infringe at least claim 19 of the '714 Patent by using the Digital Fiber DAS in its intended manner to infringe. Fiplex induces such infringement by providing the Digital Fiber DAS and instructions to enable and facilitate infringement, knowing of, or being willfully blind to the existence of, the '714 Patent. *See, e.g.*, Exhibits C & D.

33.     Upon information and belief, Fiplex specifically intends that its actions will result in infringement of at least claim 19 of the '714 Patent, or subjectively believes that its actions will result in infringement of the '714 Patent.

34.     Fiplex contributorily infringes at least claim 19 of the '714 Patent by providing "Digital Fiber DAS" and/or software or hardware components thereof that embody a material part of the claimed inventions of the '714 Patent, that are known by Fiplex to be specially made or adapted for use in an infringing manner as recited above, and are not staple articles with substantial non-infringing uses.  For example, the DRs and DMs of the "Digital Fiber DAS" are designed to operate and are intended for use in the manner recited above.  On information and belief, DRs and DMs are material components of the "Digital Fiber DAS" and are not staple articles or commodities of commerce.

35. Dali has been damaged, and will continue to be damaged, by Fiplex's infringement of the '714 patent, including without limitation, lost profits and not less than a reasonable royalty, in an amount to be proven at the time of trial.

36. Dali has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Dali, and the public interest would be served through the issuance of a preliminary injunction.

37. Fiplex's infringement of the '714 patent was, and continues to be, willful and deliberate, entitling Dali to enhanced damages and attorney fees.

38. Fiplex's infringement of the '714 patent was, and continues to be, exceptional and entitles Dali to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II
### (Fiplex's Infringement of the '242 Patent)

39. Dali incorporates by reference Paragraphs 1-38 as if fully restated herein.

40. On September 6, 2016, the PTO duly and lawfully issued U.S. Patent No. 9,439,242 (the "'242 patent"), titled "Time Synchronized Routing in a Distributed Antenna System."

41. The '242 patent claims priority to U.S. Provisional Patent Application No. 61/682,632, filed on August 13, 2012, entitled "Time Synchronized Routing in a Distributed Antenna System."

42. The '242 patent discloses and claims, among other things, a system and method for time synchronized routing signals in a DAS.

43. Dali is the owner and assignee of all rights, title, and interest in and to the '242 patent and holds the right to sue and recover damages for infringement thereof, including current and past infringement.

44. The '242 patent is valid and enforceable.

45. Fiplex has infringed and is infringing, either literally or under the doctrine of equivalents, at least claim 11 of the '242 patent in violation of 35 U.S.C. §§ 217, *et seq.*, directly and/or indirectly, by making, using, selling, offering for sale in the United States, and/or importing into the United States, without authority or license, its "Digital Fiber DAS" system.

46. Fiplex had been, and currently is, an active inducer of infringement of the '242 patent under 35 U.S.C. § 271(b) and a contributory infringer of the '242 patent under 35 U.S.C. § 271(c).

47. Claim 11 of the '242 patent states "A method for routing signals in a Distributed Antenna System including a plurality of Digital Access Units (DAUs), a plurality of Digital Remote Units (DRUs), a plurality of Base Transceiver Stations (BTSs), and a plurality of Base Transceiver Station sector RF connections, the method comprising: transporting signals between the plurality of DRUs and the plurality of DAUs; routing the signals between the plurality of DAUs; routing the signals between the plurality of DAUs and the plurality of BTS section RF connections; providing routing tables; using a first delay compensation merge unit in a first DRU of the plurality of DRUs to delay a first signal; and using a second delay compensation merge unit in a second DRU of the plurality of DRUs to delay a second signal."

48. Publicly available documents demonstrate that Fiplex's Digital Fiber DAS infringes at least claim 11 of the '242 patent.

49. Digital Fiber DAS are distributed antenna systems with a plurality of DAUs, DRUs, BTSs, and BTS sector RF connections. A depiction of Fiplex's Digital Fiber DAS is below (See Exhibit C):



Typical application, dual band Digital DAS with single or multiband Digital Remote Units

Notes:
C: Coupler
DM: Digital Master Unit
DR: Digital Remote Unit

50. The DMs (DAUs in the '242 patent) are connected to one another, and the DRs (DRUs in the '242 patent) are connected to the DMs. This allows signals to be transported between the DRs and the DMs. In addition, the DMs are connected to one another. This allows signals to be transported between the plurality of DMs. The DMs are further connected to the BTSs so that signals can be transported between the DMs and the BTSs.

51. On information and belief, routing tables are necessary to appropriately route the signals within the DAS.

52. Finally, each remote unit contains a delay compensation merge unit. See Exhibit E "Fiplex Digital Fiber Distributed Antenna Systems (DAS)" White Paper at p. 6.

53. Fiplex knew of the '242 patent, or should have known of the '242 patent and its infringing acts, at least as early as October 29, 2016.

54. Fiplex knowingly and intentionally encourages and aids at least its end-user customers to directly infringe the '242 Patent. On information and belief, Fiplex provides "Digital Fiber DAS" and instructions to end-user customers so that such customers will use the products in an

infringing manner.  For example, Fiplex and its agents promote and demonstrate Digital Fiber DAS at trade shows and in various publications. *See, e.g.*, Exhibits C & D.

55. Fiplex's end-user customers directly infringe at least claim 11 of the '242 Patent by using Digital Fiber DAS in their intended manner to infringe. Fiplex induces such infringement by providing the Digital Fiber DAS and instructions to enable and facilitate infringement, knowing of, or being willfully blind to the existence of, the '242 Patent. *See, e.g.*, Exhibits C & D.

56. Upon information and belief, Fiplex specifically intends that its actions will result in infringement of at least claim 11 of the '242 Patent, or subjectively believes that its actions will result in infringement of the '242 Patent.

57. Fiplex contributorily infringes at least claim 11 of the '242 Patent by providing the Digital Fiber DAS and/or software or hardware components thereof, that embody a material part of the claimed inventions of the '242 Patent, that are known by Fiplex to be specially made or adapted for use in an infringing manner as recited above, and are not staple articles with substantial non-infringing uses.  For example, the DRs and DMs of the Digital Fiber DAS are designed to operate and are intended for use in the manner recited above.  On information and belief, DRs and DMs are material components of the Digital Fiber DAS and are not staple articles or commodities of commerce.

58. Dali has been damaged, and will continue to be damaged, by Fiplex's infringement of the '242 patent, including without limitation lost profits and not less than a reasonable royalty, in an amount to be proven at the time of trial.

59. Dali has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law. The balance of hardships favors Dali, and the public interest would be served through the issuance of a preliminary injunction.

60. Fiplex's infringement of the '242 patent was, and continues to be, willful and deliberate, entitling Dali to enhanced damages and attorney fees.

61. Fiplex's infringement of the '242 patent is exceptional and entitles Dali to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Dali respectfully requests the following relief:

a. A judgment that Fiplex has infringed one or more claims of the '714 patent;

b. A judgment that Fiplex has infringed one or more claims of the '242 patent;

c. An order and judgment preliminarily and permanently enjoining Fiplex and its officers, agents, employees, and affiliates, and all those persons acting or attempting to act in concert or participation with them, from further acts of infringement of the Asserted Patents;

d. That judgment be rendered in favor of Dali awarding Dali all damages adequate to compensate it for Fiplex's infringement of the Asserted Patents, including all pre-judgment interest and post-judgment interest at the maximum rate permitted by law;

e. A judgment that Dali be awarded the attorney fees, costs, and expenses it incurs in prosecuting this action;

f. For an order finding this case exceptional pursuant to 35 U.S.C. § 285; and

g. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Dali demands a trial by jury of all issues so triable, pursuant to Federal Rule of Civil Procedure 38.

Dated: October 31, 2016

        Respectfully submitted,

        s/ Sarah Clasby Engel, P.A.
        Sarah Clasby Engel, P.A.
        Florida Bar No. 991030
        sengel@harkeclasby.com
        Lance A. Harke, P.A.
        Florida Bar No. 863599
        lharke@harkeclasby.com
        **HARKE CLASBY & BUSHMAN LLP**
        9699 NE Second Avenue
        Miami Shores, Florida 33138
        Telephone:    (305) 536-8220
        Telecopier:    (305) 536-8229

        Cristofer I. Leffler (to be admitted *pro hac vice*)
        Joel B. Ard (to be admitted *pro hac vice*)
        Scott Born (to be admitted *pro hac vice*)
        Benjamin J. Hodges (to be admitted *pro hac vice*)
        **FOSTER PEPPER PLLC**
        1111 Third Avenue, Suite 3000
        Seattle, WA 98101
        Telephone No. (206) 447-4400
        Facsimile No. (206) 447-9700

        *Attorneys for Plaintiff Dali Wireless, Inc.*